521 So.2d 783 (1988)
STATE of Louisiana, Appellee,
v.
Linda S. FREEMAN, Appellant.
No. 19363-KA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
Rehearing Denied March 24, 1988.
*784 Milton Dale Peacock, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., William B. Faust, III, Asst. Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Joseph T. Mickel, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, C.J., and FRED W. JONES, Jr. and SEXTON, JJ.
SEXTON, Judge.
The defendant, Linda S. Freeman, was charged with the crime of second degree murder in violation of LSA-R.S. 14:30.1. The defendant was subsequently convicted of the responsive verdict of manslaughter and sentenced to the maximum sentence of twenty-one years at hard labor. Defendant now appeals her conviction and sentence asserting four assignments of error. Finding no merit to defendant's claims, we affirm the conviction and sentence.

FACTS
On the evening of July 7, 1986, the defendant, Linda Freeman, visited the home of Sam Green, grandfather of the victim, in order to obtain money that he owed to her. Words were exchanged between the sister of the elder Mr. Green and the defendant. The defendant and the elderly woman eventually engaged in a "slapping" match. Mr. Green evidently intervened and was struck by the defendant. The blow sent him to the ground where he hit his head. The defendant, approximately 6' 3" tall, physically picked up Mr. Green and deposited him into a chair. She then walked away across the yard.
Evidently, upon seeing the condition of his grandfather, Len Green, whose real name was also Sam Green, approached the defendant. He was deaf and dumb. The record, although somewhat in conflict as to what transpired, reveals that the victim then received a stab wound to the chest which led to his untimely demise. All of the eyewitnesses, except the defendant and one witness, testified consistently. These witnesses, Juanita Towns, Lela Mae Flowers, and John Talton, stated that the victim approached the defendant and touched her on the left shoulder, apparently to inquire about why she had assaulted his grandfather. She turned and immediately stabbed him, piercing his heart. The state's witnesses testified that at this point the victim *785 briskly walked away from the defendant and fell to the ground while at the same time dislodging a real estate sign. The defendant then approached the victim while he used the real estate sign for protection from her, apparently assuming further hostile intentions.
The defendant, however, recalled a different scenario. She stated that the victim initially approached her with the real estate sign, which made her fearful for her life and caused her to stab him in defense of herself. The defendant at that point walked away from the victim to a nearby lounge.
Hugh Cooper testified that after the confrontation between the defendant and the elder Sam Green, Len approached the defendant and the two engaged in some sort of embrace. He testified that the victim then pushed the defendant back and grabbed the sign as if to strike the defendant, but the defendant pushed him down.

ASSIGNMENT OF ERROR NO. 1
Appellant asserts by Assignment of Error No. 1 that there was insufficient evidence to convict her of manslaughter inasmuch as the state failed to prove beyond a reasonable doubt that she did not act in self-defense when she inflicted the fatal stab wound.
In reviewing a claim of insufficient evidence, we resolve any conflict of evidence in the light most favorable to the state and determine whether the facts established by the direct evidence and inferred from the circumstantial evidence are sufficient for a rational factfinder to conclude beyond a reasonable doubt that the homicide was not perpetrated in self-defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984). In a homicide case the state must in addition prove beyond a reasonable doubt that the killing was not perpetrated in self-defense. State v. Brown, 414 So.2d 726 (La.1982); State v. Ruff, 504 So.2d 72 (La.App. 2d Cir.1987), writs denied, 508 So.2d 64, 65 (La.1987). LSA-R.S. 14:20(1), provides that an act is committed in self-defense when committed by
one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger....
Although the testimony of the witnesses is in conflict as to the fatal stroke, there is more than ample evidence, when viewed in the light most favorable to the state, to prove beyond a reasonable doubt that the defendant did not act in self-defense. All of the eyewitnesses, except the defendant, testified that the victim approached the defendant and merely touched her on the shoulder. This was the testimony of John Talton, an eyewitness, Lela Mae Flowers, the mother of the victim, as well as that of Juanita Towns, who all witnessed the incident. Although the testimony of Hugh Cooper, another witness to the incident, is somewhat divergent from the rest of the testimony, his testimony nevertheless reveals that the victim approached the defendant initially without the sign and then after this confrontation obtained the real estate sign.
We therefore conclude that the evidence when viewed in the light most favorable to the state supports the finding that the stabbing occurred only after the victim touched the defendant on the shoulder in a manner which was not threatening. The evidence, therefore, fails to demonstrate that the defendant acted in self-defense. We conclude that there is sufficient evidence to support the manslaughter conviction, as well as sufficient proof that the homicide was not committed in self-defense.

ASSIGNMENT OF ERROR NO. 2
In Assignment of Error No. 2, appellant asserts that the trial court erred in refusing to allow the introduction of the defendant's taped confession/statement made on the night of the victim's death.
Shortly after the defendant's arrest on the second degree murder charge, Detective Ron Schleuter was informed that the defendant wished to speak with him. She *786 admitted stabbing the victim and told the detective where to find the knife. An hour and a half later, the detective and another officer took a recorded statement from the defendant. During that statement, she first mentioned the act of self-defense. At trial, the state introduced her oral confession but choose not to enter the taped statement. Defendant then sought to have the taped statement introduced pursuant to LSA-R.S. 15:450.[1] The trial court disallowed the defense effort, determining that the oral statement and the later recorded statement constituted separate statements.
The defendant contends that the two statements were in effect one continuous declaration. In so contending, the defense attempts to distinguish State v. Guillory, 373 So.2d 133 (La.1979), on the basis that the second statement, which was held inadmissible in Guillory, was given a day after the first statement.
Generally, any out-of-court statement of the accused constitutes hearsay unless subject to an exception. McCormick on Evidence, § 145 (2d ed. 1972). Such a statement is admissible as an exception to the hearsay rule when it is an admission against interest. McCormick on Evidence, supra. Thus, the defendant may not introduce his own self-serving exculpatory statements because they are hearsay. State v. Melerine, 109 So.2d 471 (La.1979); State v. Joseph, 454 So.2d 237 (La.App. 5th Cir.1984); State v. Day, 468 So.2d 1336 (La.App. 1st Cir.1985); McCormick on Evidence, supra. Therefore, because the defendant is entitled to have the entirety of an inculpatory statement introduced, the defendant's statement here is admissible only if it is a continuing part of an inculpatory statement. LSA-R.S. 15:450. The instant statement given an hour and a half after the first statement is separate, distinct and self-serving. It is, therefore, inadmissible. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
Defendant alleges in Assignment of Error No. 3 that the trial court committed reversible error when it refused to allow the defendant to cross-examine one of the state's witnesses concerning the victim's reputation for violence.
The defendant in this case admits that there was no evidence of an "overt act" introduced at the time of the objection. She argues, however, that the state had "opened the door" to an examination of the victim's reputation for violence when it inquired of one of its witnesses about the issue.
The transcript reveals that the prosecution specifically asked its witness, John Talton, the question, "Okay did you know Lynn to be a violent person?" Talton responded, "Not really." No objection was made to this question. During cross-examination of the state's next witness, William Gipson, defense counsel, attempted to question Gipson along the same lines that the prosecution had questioned Talton.
The state objected and the defense responded that the state had "opened the door" with the similar question to the previous witness Talton. The trial court noted the "open door" but sustained the state's objection because no evidence of an overt act had been introduced at that point pursuant to LSA-R.S. 15:482.[2] In sustaining the objection, the court noted that if the defense had objected to the state's similar question to Talton, the question would not have been allowed. Thus, the court's ruling was made in an effort to limit the issues to the current context of the trial.
*787 In making this ruling, the trial court specifically pointed out that the ruling was for the moment only and advised defense counsel that the matter was subject to reconsideration depending on the circumstances of the case at the time the issue might rearise. Defense counsel noted an objection in the event the defendant took the stand, presumably in case the defendant testified to an overt act by the victim. Indeed, the defendant did testify to such an act making evidence of any violent reputation of the victim admissible. State v. Edwards, 420 So.2d 663 (La.1982); State v. Lee, 331 So.2d 455 (La.1975). However, defense counsel did not press the issue further.
Though we think the better practice would have been to allow the question since the state had indeed opened the door, under the circumstances here presented, we are not prepared to say that the ruling amounted to error, nor can we perceive under the circumstances that the defendant was prejudiced. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 4
Defendant's final assignment of error asserts that the sentence imposed in this case was constitutionally excessive as the defendant was a first felony offender who was sentenced to the maximum term of imprisonment, twenty-one years at hard labor, even though there existed mitigating factors which mandated a lesser sentence.
The imposition of a sentence even within the statutory limit may be unconstitutionally excessive if it is grossly out of proportion to the severity of the crime or is nothing more than a purposeless and needless imposition of pain and suffering. There must be an indication in the record that the trial court considered both the aggravating and mitigating factors set forth in LSA-C. Cr.P. Art. 894.1 in determining the defendant's particular sentence. State v. Quebedeaux, 424 So.2d 1009 (La.1982), appeal after remand, 446 So.2d 1210 (La.1984).
Once adequate compliance with LSA-C.Cr.P. Art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of a particular defendant and the circumstances of the case keeping in mind that maximum sentences should be reserved for the most serious violators of the offense charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
In the present instance, defendant does not argue that the trial judge failed to comply with LSA-C.Cr.P. Art. 894.1. Indeed, the sentencing transcript reveals that the trial judge extensively discussed his reasons for the sentence imposed. The trial judge sufficiently considered the background of the defendant and especially took note that the defendant took a human life, a most serious offense. The trial judge noted that he did not find that the defendant acted under provocation or that the victim induced or facilitated the commission of the offense. The court considered the defendant's lack of a criminal history, particularly noting that she had not previously committed a crime. However, he felt that the actions were excessive and abrupt under the circumstances, and he was fearful that if she was placed in the same situation again she may take excessive action in the future. The court considered the defendant an undue risk during the period of a suspended or probated sentence and felt that she might commit another crime. The court felt that the spontaneity of her actions indicated that the defendant was not likely to contemplate the natural result of abhorrent actions. The court likewise considered that a lesser sentence would deprecate the seriousness of the crime which caused the loss of a human life.
The fact that the defendant was convicted indicates that the jury must have accepted the state's version of the case and rejected that espoused by the defendant. Thus, the jury determined that this deaf and dumb victim was struck straight in the heart after only slightly touching this defendant. While the defendant had recently been in an altercation with the victim's elder father, it cannot be said that the act against this victim was "committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive *788 an average person of his self-control and cool reflection." The offense actually committed is therefore not technically manslaughter but is second degree murder. LSA-R.S. 14:30.1 and 14:31. Since the conduct involved is not adequately described by the offense, the concept that the maximum sentence can be imposed only for the most serious violation and the worst type of offender is not applicable. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Darby, 476 So.2d 400 (La.App. 2d Cir.1985); State v. Martin, 475 So.2d 101 (La.App. 2d Cir.1985).
Under the aforesaid circumstances then, while we consider the instant sentence harsh, we are unable to say that it is an abuse of discretion and a purposeless imposition of pain and suffering.
The defendant's conviction and sentence are affirmed.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before JASPER E. JONES, SEXTON, HALL, FRED W. JONES and NORRIS, JJ.
Rehearing denied.
NOTES
[1] LSA-R.S. 15:450 reads as follows:

§ 450. Use of confession, admission or declaration in entirety
Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
[2] LSA-R.S. 15:482 reads as follows:

§ 482. Restriction on use of evidence of threats or dangerous character of party injured
In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.